IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| STUART R. COLE | § | |
| | § | |
| VS. | § | NO. 3-07-CV-2102-D |
| | § | NO. 3-03-CR-0431-D |
| UNITED STATES OF AMERICA | § | ECF |
| | § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

This cause of action was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b), as implemented by an order of the United States District Court for the Northern District of Texas. The Findings, Conclusions and Recommendation of the United States Magistrate Judge follow:

**FINDINGS AND CONCLUSIONS**

**I.  Procedural Background**

On January 19, 2005, Petitioner was charged in all counts of a 34-count superseding indictment. Counts one through four charged him with securities fraud, each in violation of 15 U.S.C. §§ 77q(a) and 77(x). Counts five through nine charged Petitioner with mail fraud, each in violation of 18 U.S.C. § 1341. Count ten charged him with wire fraud, in violation of 18 U.S.C. § 1343. Counts 11 through 31 charged Petitioner with interstate transportation of money taken by fraud, each in violation of 18 U.S.C. § 2314. Count 32 charged him with illegal monetary transactions and aiding and abetting, in violation of 18 U.S.C. §§ 1956(a)(1)(a)(I) and 2. Counts 33 and 34 charged Petitioner with money laundering, each in violation of 18 U.S.C. § 1957.

Page 1

On March 9, 2005, a jury convicted Petitioner on all counts of the indictment. On June 13, 2005, the court sentenced Petitioner to 109 months imprisonment and three years supervised release. The court ordered restitution in the amount of $1,952,547.67. On July 18, 2006, the Fifth Circuit Court of Appeals affirmed the conviction. *United States v. Cole*, No. 05-10782 (5th Cir. July 18, 2006). On January 8, 2007, the Supreme Court denied Petitioner's petition for writ of certiorari.

On December 17, 2007, Petitioner filed this petition pursuant to 28 U.S.C. § 2255. On May 16, 2008, the undersigned magistrate judge entered findings, conclusions and a recommendation ("Findings") that the petition be denied. On May 22, 2008, Petitioner filed objections to the Findings. On June 2, 2008, Petitioner filed amended objections. On July 15, 2008, the district court adopted in part and declined to adopt in part the magistrate judge's Findings. The district court re-referred the action to the magistrate judge. On November 25, 2008, the magistrate judge held an evidentiary hearing. On January 12, 2009, Petitioner submitted additional briefing. On February 9, 2009, Respondent filed its response. The Court now finds that Petitioner's remaining claims should be denied.

## II.  Discussion

Petitioner claims his trial attorney, Billy Ravkind, provided ineffective assistance of counsel. He argues Ravkind: (1) failed to file certain motions; (2) substituted other attorneys into his place who were unprepared to try the case; and (3) failed to call several important witnesses to testify.

To sustain a claim of ineffective assistance of counsel, Petitioner must show that: (1) counsel's performance was deficient; and (2) the deficient performance prejudiced the defense so

gravely as to deprive Petitioner of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).[1] In *Strickland*, the Court stated that "[j]udicial scrutiny of counsel's performance must be highly deferential" and "every effort [must] be made to eliminate the distorting effects of hindsight." *Strickland*, 466 U.S. at 689. Courts, therefore, must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*.

Even if counsel is proven deficient, a petitioner must prove prejudice. To prove such prejudice, Petitioner must show "a reasonable probability that the result of the proceedings would have been different but for counsel's unprofessional errors." *Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir. 1999) (citing *Strickland*, 466 U.S. at 694). "[T]he mere possibility of a different outcome is not sufficient to prevail on the prejudice prong." *Id*. "Rather, the defendant must demonstrate that the prejudice rendered sentencing 'fundamentally unfair or unreliable.'" *Id*. (quoting *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993)).

**(A)   Failure to Call Witnesses**

**(1) Miscellaneous Witnesses**

Petitioner argues his counsel was ineffective for failing to call a number of witnesses. Petitioner states Ravkind should have called Petitioner's father, Jack Cole, who could have testified "to the legitimate manner in which Cole raised funds for various oil and gas

---

[1] In the conclusion paragraph of Petitioner's January 9, 2009, supplemental briefing, Petitioner appears to argue that the Court should apply the ineffective assistance standard found in *United States v. Cronic*, 466 U.S. 648, 659 n.25 (1984). In that case, the Court stated a petitioner could establish ineffective assistance of counsel without having to show prejudice if counsel is either totally absent, or is prevented from assisting the accused during a critical stage of the proceeding. As discussed in this order, the Court does not find the facts of Petitioner's trial sufficient to warrant application of the *Cronic* standard. The Court therefore applies the ineffective assistance of counsel standard found in *Strickland*.

projects relative to various time periods cited in the Indictment." (Petr's Am. Objections at 3).

Petitioner also argues his counsel should have interviewed and called Kelly Childers and Jim Shaw as witnesses. He states these witnesses "would have easily validated conversations with Cole and reflected upon prior conversations with him concerning his good intentions and total lack of any willfulness to deceive." (*Id*. at 4).

Additionally, Petitioner argues his counsel was ineffective for failing to "interview anyone from the Midland, Texas Law Firm of Cotton, Bledsoe, Tighe & Dawson who would have been able to also validate that Cole's wire transfers of money to them was legitimately earmarked, generated and was to be utilized for the specific purpose of finishing certain drilling projects and to their knowledge, nothing about this particular transaction was fraudulent in the least." *Id*.

Petitioner did not call any of these witnesses at the evidentiary hearing. He also did not submit any affidavits or other evidence that any of these witnesses would have testified at trial and that their testimony would have been favorable to the defense. *See Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985) (stating "for the appellant to demonstrate the requisite *Strickland* prejudice, the appellant must show not only that this testimony would have been favorable, but also that the witness would have testified at trial."); *see also See Martin v. McCotter*, 796 F.2d 813, 819 (5th Cir. 1986) (finding "hypothetical or theoretical testimony will not justify the issuance of a writ . . . ."). Petitioner's claims regarding these witnesses should be denied.

### (2) Joe Foster

Petitioner also argues Ravkind was ineffective for failing to interview and call Joe Foster

as a witness. He states that Foster's potential testimony "would have ultimately proven that Cole had no intent or knowledge relative to Security and Mail Fraud." (Petr's Am. Objections at 4). Additionally, he states that by interviewing Foster, "Ravkind would have discovered other potential defense witnesses within Ammonite Energy Company, owned by Foster, who, upon subpoena, would have been able to validate Foster's complicity which would have greatly served to potentially exonerate Cole." *Id.*

As with the witnesses discussed above, Petitioner did not call Foster as a witness during the evidentiary hearing, and he has submitted no evidence that Foster would have testified at trial in favor of the defense.

Additionally, during the evidentiary hearing, Petitioner's counsel asked Ravkind why he did not call Foster as a trial witness. Ravkind stated:

> The only defense we had was to blame someone else, and that was Mr. Foster, that Mr. Foster created all these problems. Now some of those problems we were having a hard time with Mr. Foster. We had no control over Mr. Foster. My feeling was that Mr. Foster – because the government didn't know what to do with him either because no one believed him is my recollection.
>
> I didn't think that Foster was worth the risk because anything about Foster we didn't need him to say it. We had other evidence of its existence.

(Evid. Hr'g at 61-62).

Petitioner has not shown Ravkind was deficient for not calling Foster as a witness. Petitioner's claim regarding this witness should be denied.

**(3)    Richard Rinehart**

Petitioner argues his counsel was ineffective for failing to call Richard Rinehart as a witness. Rinehart was called as a witness by the government in its case-in-chief. Ravkind cross-examined Rinehart, but the government objected to any questions going beyond the scope of

direct examination. Ravkind stated he would call Rinehart as a witness during his case-in-chief, but he did not do so.[2]

Rinehart testified at the evidentiary hearing that his company considered entering an investment relationship with Petitioner regarding the Wyoming wells. (Evid. Hr'g at 12, 15). Rinehart stated that his company determined they did not want to enter into any business relationship with Foster. (*Id*. at 12, 15-16). Rinehart stated he believed Foster made misrepresentations regarding his control over acreage in the area of mutual interest ("AMI"). (*Id*. at 17). He testified he initially told Petitioner that his company might be interested in entering an investment relationship with Petitioner if Foster was not involved. (*Id*. at 16). Rinehart stated, however, that after conducting further due diligence, his company decided not to enter into an investment relationship with Petitioner because there was not enough potential in the property. (*Id*. at 13, 16).

Petitioner argues Rinehart's testimony was important because the indictment alleged that Petitioner knowingly made false and fraudulent statements regarding PetroQuest's interests in the AMI. The indictment stated that Petitioner:

knowingly and willfully made, and caused to be made, false and fraudulent representations, pretenses, and promises to investors in the CWI, which were false and fraudulent when made, including the following:

(a) That PetroQuest owned or had an option to own several thousand acres in the Powder River Basin prospect

(Indictment at 11).

---

[2]Petitioner argues Ravkind failed to interview Rinehart prior to trial. Although Rinehart testified at the evidentiary hearing that he did not recall speaking to Ravkind before trial, the trial transcripts reflect that Rinehart had two brief phone conversations with Ravkind prior to trial. (Trial Tr. Vol. 6 at 197).

Petitioner argues Rinehart could support his claim that because Foster made misrepresentations regarding his control over the AMI, Petitioner did not know that PetroQuest did not own or have an option to own the acreage in the AMI.

Although Ravkind did not call Rinehart to testify, he did enter into evidence a July 2001 letter signed by Rinehart and addressed to PetroQuest. (Trial Tr. Vol. 8 at 91). The letter stated that one of the reasons Rinehart's company did not enter into an investment relationship with PetroQuest to buy out Ammonite's interest in the AMI is because:

> [B]ased upon our due diligence review, Ammonite could not deliver the properties represented. We conclude that Ammonite has not perfected its rights under the various farm-out agreements, liens have been filed on certain of the acreage, excluding the expected Powers' lien, owned by Ammonite and certain unrecorded assignments of interests to third parties have been made. Therefore, we conclude that Ammonite could not deliver clear title.

(*Id*. at 92).

Ravkind, therefore, was able to introduce Rinehart's statements regarding Foster's inability to provide clear title to the AMI. Petitioner then testified that once he received Rinehart's letter, he abandoned the purchase and sale agreement with Foster, due to the misrepresentations Foster made in the contract. (*Id*. at 93).

Ravkind also testified at the evidentiary hearing that although Rinehart "was good at making Foster dishonest . . . . He was not very good in making us – us having performed as we had represented to the shareholders." (Evid. Hr'g at 61). Rinehart also testified during the evidentiary hearing that he had no knowledge or involvement regarding Petitioner's investors. (*Id*. at 23-24). Petitioner has not shown that Ravkind was deficient for failing to call Rinehart to testify at trial. He has also failed to show that but for Ravkind's failure to call Rinehart to testify, there is a reasonable probability that the result of the trial would have been different.

### (4) Timothy Miller

Petitioner argues Ravkind was ineffective for failing to call Timothy Miller to testify at trial. Miller represented Petitioner in the Wyoming lawsuit against Foster. Petitioner states Miller's testimony would have shown that some of the "time-frames, time-lines and facts" of the Wyoming suit "squarely relate to allegations contained in Movant's Criminal Indictment." (Petr's Am. Objections at 6).

Petitioner submitted Miller's deposition testimony into evidence. In his deposition, Miller testified that Foster failed to return $80,000 owed to Petitioner and that Petitioner paid Foster to perform work that Foster did not complete. (Miller Depo. at 10, 22). Miller also testified that based on the Wyoming suit, he did not see any indication that Petitioner defrauded his investors. (*Id*. at 15). Miller also stated, however, that he did not investigate Petitioner's dealings with his investors, and he had no knowledge or information regarding the representations Petitioner made to the investors. (*Id*. at 15, 34).

Ravkind testified at the evidentiary hearing that there were two lawsuits between Petitioner and Foster. (Evid. Hr'g at 50, 63). He stated that Cole won the suit in Wyoming because Foster did not make an appearance, and that Foster won the suit in Midland, Texas, because Cole did not appear. (*Id*. at 50). Ravkind testified that if he introduced evidence regarding the Wyoming case, the Midland case would then become relevant. (*Id*. at 63). He stated the Midland case was negative for Petitioner. *Id*. He also stated that these two lawsuits were not relevant to Petitioner's misrepresentations to the investors. (*Id*. at 55, 62). Petitioner has not shown that his counsel's conduct fell outside of reasonable trial strategy. *See Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992). Petitioner's claims should be denied.

**B.     Substitution of Counsel**

Petitioner argues Ravkind was ineffective because he left the trial before the government's rebuttal closing arguments, and he substituted attorneys Michael Bowers and Gary Udashen in his place.[3]

**(1)     Michael Bowers**

Although the trial record is not clear as to when Ravkind left for his surgery appointment, Ravkind testified at the evidentiary hearing that he left before the government's rebuttal closing arguments. (Evid. Hr'g at 59, 62-63). The record also shows that Bowers argued the first portion of Petitioner's closing arguments, and Ravkind argued the second portion of the argument. (Trial Tr. Vol. 9 at 121-153). Ravkind therefore apparently argued the second portion of Petitioner's closing arguments, and then left for his appointment. Bowers remained as counsel during the government's rebuttal closing.

Petitioner argues Bowers was "totally inexperienced," was "totally unprepared and insufficiently informed about [Petitioner's] case," and was absent during Petitioner's direct and cross-examination. (Petr's Am. Objections at 3; Petr's Supp. Memo at 3-4). As a result, Petitioner argues Bowers failed to object when the prosecutor stated in his closing argument that Petitioner had "effectively confessed" to the charges in Joint Venture B ("JV B").

The testimony at the evidentiary hearing established that Bowers was not an inexperienced lawyer. Bowers testified that prior to Petitioner's trial, he was involved in one federal criminal trial, and that he had extensive federal civil trial experience. (Evid. Hr'g at 37-

---

[3]The record shows that Ravkind informed the court and Petitioner that he might need to leave the trial early because he was scheduled for surgery. (Trial Tr. Vol. 8 at 227).

38).  Bowers also testified that he had experience with oil and gas issues.  (*Id*. at 42).  The record shows that Bowers cross-examined seven of the government's witnesses, and that he argued the first part of Petitioner's closing arguments.  Ravkind also testified at the evidentiary hearing that Bowers was active in helping him prepare for the case.  (*Id*. at 49).  The Court concludes Bowers was not "totally inexperienced."

Petitioner also argues he had no legal counsel once Ravkind left because Bowers stated in the evidentiary hearing that he was not responsible for making objections during the government's closing arguments.  Bowers, however, clarified this testimony.  Bowers testified he did not recall that Ravkind was absent during closing arguments.  (*Id* at 44).  Bowers stated that if he was the only lawyer present, "it would have been incumbent upon me to make an objection."  (*Id*. at 45).

Petitioner also argues that because Bowers was not present during Petitioner's testimony, he failed to realize that the prosecutor's rebuttal argument mischaracterized Petitioner's testimony.[4]  In his rebuttal, the prosecutor argued that Petitioner "effectively confessed" to having the intent to defraud investors in JV B.  The prosecutor stated:

> He admitted, point-blank, unequivocally, that when he sent the Joint Venture B offering document out that he knew that it misstated what was going on in Wyoming.  He admitted that he knew there weren't 12 wells drilled.  He knew there – not drilled, they're certainly not producing, as that map said.
>
> \* \* \* \*
>
> So is there any question that defendant had the intent to defraud?

---

[4] The record shows that although Bowers was not present during the first day of Petitioner's testimony, he was present for the second day of Petitioner's testimony.  (Trial Tr. Vol. 9 at 87).

> The government submits to you there is no question whatsoever. I think you can get there without even the defendant taking the stand and talking to you, but unquestionably after he tells you he knew that the document was false, that didn't slow me down, that didn't stop me, I shipped it off to investors and they bought. There is no question that the defendant admitted that. He effectively confessed on the witness stand when he told you that.

(Trial Tr. Vol. 9 at 162-63).

The record shows Petitioner admitted that the JV B documents were incorrect. He testified that the prospectus for JV B stated there were twelve wells drilled when there were only a total of eight wells from all the Joint Ventures. (Trial Tr. Vol. 8 at 198). Petitioner admitted that he directed the creation of the erroneous JV B prospectus and map. (*Id*. at 200). He stated, however, that at the time the JV B documents were mailed, he did not know that PetroQuest did not have twelve wells drilled. *Id*. He also testified that although the JV B documents stated there were twelve producing wells, the word "producing" on the documents meant that the wells were producing water. (*Id*. at 199 and Trial Tr. Vol. 9 at 20).

At the evidentiary hearing, Bowers stated he did not think that the prosecutor's argument was a mischaracterization of the evidence. (Evid. Hr'g at 46). He stated he did not believe there was a valid objection to this argument. *Id*.

The Court finds Petitioner has failed to establish that he suffered the required prejudice to show he received ineffective assistance of counsel. Petitioner must show that but for his counsel's failure to object to this comment, there is a reasonable probability that the result of the trial would have been different. "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the proceeding. *Strickland*, 466 U.S. at 694. Put into the context of the trial as a whole, the Court finds counsel's failure to object to the prosecutor's argument did not undermine the reliability of the trial's outcome. This claim should therefore be

denied.

### (2) Gary Udashen

Petitioner argues Ravkind was ineffective because of Ravkind's "continued absence at Cole's cross-examination by the government during which a newly substituted third (3rd) attorney, Gary Udashen, was injected into the proceedings at the last moment and who was totally unfamiliar with Cole's case . . . ." (Petr's Am. Objections at 9). The trial record, however, shows that Ravkind was not absent during Petitioner's testimony. Ravkind acted as Petitioner's counsel during Petitioner's testimony on direct and on cross-examination. (Trial Tr. Vol. 8 at 183-223; Vol. 9 at 2-83).

The record also shows that Udashen acted as Petitioner's counsel only during jury deliberations. (Trial Tr. Vol. 10). Petitioner consented to Udashen's representation for jury deliberations. (Trial Tr. Vol. 8 at 227). Petitioner has shown no deficient performance or prejudice due to Udashen's representation of Petitioner during this limited time. His claims should be denied.

### C. Motions

Petitioner argues Ravkind was ineffective for failing to file certain motions. He states Ravkind failed to file a motion for discovery, motion for *Brady*/*Giglio* material, motion to compel agents to preserve rough notes, motion to suppress evidence, motion for disclosure of any confidential informants and for equal access for purpose of interview, motion for notice under 404(b) of the Federal Rules of Criminal Procedure (sic), a motion to dismiss the indictment for want of sufficiency and any post-trial motions. (Petr's Am. Objections at 2,6).

Petitioner does not state what discovery should have been requested and how the

discovery would have benefitted the defense. He has not shown that any *Brady*/*Giglio* material was withheld. He has not established that any agent notes were available and that they would have been helpful to the defense. He has not stated the basis for a meritorious motion to suppress evidence, and has not stated what evidence should have been suppressed. He has not shown that there were any confidential informants. He has not shown the defense was prejudiced by any failure to file a 404(b) motion. He has failed to state a basis for dismissing the indictment as insufficient. Finally, he has failed to state a basis for any meritorious post-trial motions. Petitioner's conclusory claims that his counsel rendered ineffective assistance of counsel because he failed to file motions should be denied. *See Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983) (emphasizing that mere conclusory allegations do not raise constitutional issues in habeas proceedings).

## **RECOMMENDATION**

For the foregoing reasons, the Court recommends that the motion to correct, vacate or set-aside sentence pursuant to 28 U.S.C. § 2255 be denied.

Signed this 13th day of April, 2009.

PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

The United States District Clerk shall serve a true copy of these findings, conclusions and recommendation on Plaintiff.  Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must serve and file written objections within ten days after being served with a copy.  A party filing objections must specifically identify those findings, conclusions or recommendation to which objections are being made.  The District Court need not consider frivolous, conclusory or general objections.  A party's failure to file such written objections to these proposed findings, conclusions and recommendation shall bar that party from a *de novo* determination by the District Court.  *See Thomas v. Arn*, 474 U.S. 140, 150 (1985).  Additionally, any failure to file written objections to the proposed findings, conclusions and recommendation within ten days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).